CHIEF JUSTICE LINDSAY
delivered the opinion of the court.
Feathergail Adams died in Garrard County in Í869 seized of two hundred and twenty-seven acres of land. He left three children and heirs-at-law, James W. Adams, John "W. Adams, and Sallie Farra. His personal estate, which amounted to but a few hundred dollars in value, seems to have been appropriated by his two sons. They also took possession of, and for several years, with the apparent consent of their sister, controlled and used the real estate.
In December, 1871, John W. Adams sold one half of this realty to his brother, James. He also sold him one half of a tract of one hundred and seventeen acres of land to which they jointly held title. A note for $5,000 was executed for one half of the price agreed to be paid by James for John’s undivided interest in these two pieces of realty.
This note was sold and regularly assigned to the appellee, Thos. K. Adams. In June, 1874, he instituted this action to *518 recover judgment on the note and to enforce the vendor’s lien reserved in the deed of conveyance from John "W. to James W. Adams. He made Sallie Farra and her husband, Frank Farra, and one Robinson, a creditor of the estate of Feathergail Adams, deceased, parties defendant to his action.
He also instituted another action against the same parties on a note for $1,205, on which Feathergail Adams, deceased, had been bound either jointly with or as the surety of his two sons.
To defeat the claim of Mrs. Farra to an undivided interest of one third in the tract of two hundred and twenty-seven acres of land, owned by her father at the time of his death, Thos. K. Adams relies — first, on the alleged fact that Mrs. Farra was present at the time of the sale by one of her brothers to the other of one half of the land, and, with full knowledge of what was being done, permitted the sale to be consummated, and allowed him to purchase and pay for the note without intimating that she had an interest in the land. He charges further that she so conducted herself as to reasonably impress him with the belief that she claimed no such interest, and he insists that she is now estopped to assert her claim as against him. Second, he says that since all these transactions the last will and testament of Feathergail Adams, deceased, has been produced and regularly probated, and that by the provisions of that will Mrs. Farra is excluded from any interest in the land.
The evidence produced to support the first ground of avoidance is not sufficient to establish the alleged estoppel.
Thos. K. Adams, who testifies in his own behalf, does not pretend to say that Mrs. Farra was apprised of the negotiations going on between the two brothers, or that-she was present when the note was sold and assigned to him. He does testify to facts tending to show that her husband, Frank Farra, was present, and that he said his wife had no claim *519 to the land. The son of Thos. K. Adams swears that Mrs. Farra also said she had no such claim. In this he is flatly contradicted by Mrs. Farra, and she is supported by the evidence of John W. Adams. The lips of Frank Farra are closed by that provision of the testimony act which prohibits the husband from testifying in behalf of the wife after she has availed herself of that privilege.
But even if the testimony as to the knowledge of the husband be given full weight, no such case is made out as that reported in 8 B. Monroe (p. 539), where both the husband and the wife remained silent as to a latent and doubtful interest of the wife in a slave, and saw him sold for full value to an innocent purchaser, who had not the means of discovering the existence of the wdfe’s right.
The appellee was apprised of the heirship of Mrs. Farra. The public records did not show that she had conveyed her interest in the land to any one; and although she was in the house wdth the parties at the time he purchased the note, the appellee does not recollect that he asked her as to whether she had sold to her two brothers, or even advised her that he was about to make the purchase upon the assumption that she had no interest in the land.
The proof does not show that Mrs. Farra had even agreed to sell to her brothers. Negotiations had been going on between them for several years, but they had not at any time agreed as to the price, and neither she or her husband had ever received one cent in payment from either of the brothers, and no written memorial of the negotiations had ever been entered into. It is clear that if Mrs. Farra ever had an interest in the land she still owns it, and is not estopped to assert her claim.
But the will of her father does defeat any claim she might otherwise have asserted as heir-at-law. The following is the substance of that instrument:
*520 “I give to my two sons, John and James Adams, the tract of land on which I now reside, at the price of $20,000.
“I charge my daughter, Sally Farra, the sum of $3,000 for negroes, cash, and other property given to her at her marriage.
“ I also will and bequeath said Sally the following slaves, to wit: Carego, Louisa, Lucy Ann, Margaret, Chaney, at the sum of $5,600.
“ I also give my sons, Jack and James, the following slaves: William, Jane, and Penn, at the price of $2,800.
“From this calculation and division my daughter, Sally, lacks $2,800 to make her equal with my sons, which is to be paid her out of the personal property; and if there is not sufficient property to pay said sum, then my sons are to make her up said sum in three equal annual installments.
“I further will and bequeath my son James the sum of $600, independent of the rest of my children, for the purpose of educating said James Adams.”
This will was published ten years prior to the death of the testator. For some reason, susceptible possibly of explanation, it was not presented for probate until five years after his death. It seems that Mrs. Farra was apprised of the fact that her father had made a will; but the proof does not show that she knew it to be in existence at the time of his death, and the relative in whose custody it was placed for safe-keeping seems to have forgotten all about it.
Mrs. Farra claims that she has a lien upon the realty devised to her two brothers to secure the payment of her legacy, and that it is superior to the lien of the appellee.
He insists her legacy is not a charge on the estate devised, and that Mrs. Farra’s only remedy is the assertion of her right of action against the brothers upon the personal liability created by their acceptance of the devise; and this seems to have been the opinion of the circuit judge.
*521 In the case of Berry v. Headington (3 J. J. Marshall, 315) the devise was to the wife of the testator, “ but ... on these conditions,” that she should support and educate the testator’s daughter, and pay to his son while a minor a fixed annuity. And this court held the annuity to be “ a charge in rem, and not in personam.”
Jarman, in his work on wills, cites a number of cases showing that such legacies charge the realty devised. (Vol. 2, side-page 525.) Among others, the cases of Aubrey v. Middleton and Alcock v. Sparhawk. In the case first named the testator gave several legacies and annuities to be paid by his executor, and then devised all the rest and residue of his goods and chattels and estate to his nephew (who was his heir-at-law), and appointed him executor of his will.
The will in the latter case was of the same import, and in each case it was held that the real estate was chargeable with the legacies and annuities in aid of the personalty.
In the case of Harris v. Fly (7 Paige Ch’y, 422) the devise of the realty was to the son of the testator, who ivas also made an executor of the will. The testator also “ devised ” to each of his two daughters $1,000, to be paid to them by his son (the devisee of the real estate) in six equal annual installments, the first payment to be made one year after the death of their mother. The real estate thus devised was afterward seized under execution and sold for the debts of the devisee. Subsequent to the conveyance by the sheriff one of the daughters asserted an equitable lien on this estate to secure the payment of her legacy, and in the contest between her and the execution purchaser it was held by Chancellor Wolworth that although the testator did not in terms create an equitable charge upon the devised premises, for the payment of the legacies to the daughters, it existed by implication.
Whilst recognizing the general rule that legacies and debts are primarily to be paid out of the personal estate he de *522 dared that when the realty is devised to the person who by the will is directed to pay the legacy, it is an equitable charge on the realty, although the devisee may also be made the executor and the residuary legatee of the personalty, unless the will shall itself indicate a contrary intention on the part of the testator.
The decisions on this question are not altogether uniform, but in our opinion the conclusion of the chancellor in the case supra, is supported by the decided weight of authority, and the rule he indicates is, without doubt, the proper one to apply in a case like this, where the devisees are the sons of the testator and the legatee is his daughter, and where the will shows that the sons are directed to pay the legacy in order to insure perfect equality among the three persons whom the testator distinctly recognizes as having equal claims to his bounty.
As the appellee must establish through the will the exclusive right of James and John Adams to the land, he must take notice also of the equitable lien of Mrs. Farra, and as that lien is superior to the vendor’s lien he is attempting to assert, it was error in the court below to postpone Mrs. Farra for his benefit.
The debts of the testator represented by the $1,205.00 note held by the appellee and the $250 note held by Robinson must be first paid out of the proceeds of 227 acre tract of land. The legacy of Mrs. Farra must then be paid out of said proceeds, and then as to one half of the remainder the claim of the appellee is superior to that of any other creditor.
But as the two sons did not receive as much real estate as was originally intended for them by their father, he having sold a portion of his home farm after the publication of his will, it may be proper to inquire whether Mrs. Farra is entitled to receive the full amount of her legacy, and to this extent the case will be left open for the action of the court below. The slaves devised were all freed by the adoption of the thirteenth article of amendment to the Federal Constitution, and hence *523 their value will not be considered in estimating the value of the devises and the legacy to the sons and daughters.
The sons will be charged with the value of 227 acres of land at the date of the father’s death; the daughter with the $3,000 advanced to her at the time of her marriage as of the same date. The legacy to James no doubt exhausted all the personal estate left by the testator, therefore its value need not be taken into consideration.
If the notes held by Robinson and the appellee represent the debts of the testator it may be necessary to require Mrs. Farra to contribute to their payment, but if he was bound only as the surety of the sons she will not be required to abate any thing from her legacy on that account.
If on a statement of the accounts upon this basis it shall turn out that the payment to Mrs. Farra of the full amount of her legacy will more than equalize her with her brothers, the legacy will be abated to the extent necessary to produce equality; otherwise she will be paid in full.
It is evident Mrs. Farra did not intend to charge her brothers rent for her supposed one third interest in the realty, and that she permitted them to use and control it upon that assumption. And we are of opinion that the change in the facts produced by the production and probate of the will ought not to result in the creation in her behalf of a claim against them not theretofore contemplated by the parties. The interest on the legacy should be treated as the parties expected to treat the rent of the lands. Hence Mrs. Farra will not be allowed interest except from the date at which she set up her claim by filing her answer and cross-petition.
The judgment is reversed, and the cause remanded for further proper proceedings, and for a final judgment conforming to this opinion.