### HOWARD et al. v. REYNOLDS et al.

Court of Appeals of Kentucky.

Oct. 30, 1953.

Caswell P. Lane, Mt. Sterling, for appellants.

Henry H. Bramblet, Neil R. Maxey, Mt. Sterling, for appellees.

CAMMACK, Justice.

This is a declaratory judgment proceeding involving the construction of the will of Hayden Reynolds. The will follows:

"Will of H. Reynolds
Nov 1951

As I wish to give what I own to my heirs— will try to block a plan. I wish to give to Ellis the farm and he could pay Dock his interest in it in 3 years and then with Dock's interest and his he would own ½ the worth of the estate, and borry the other half on the land and *and* deposit it in the bank for Earl and Virginia or put it in land or some thing where it wont be easted or put in property and deed to them

and heirs. I believe $4,000 each would be a fair value for each share Wesley is to have $15.00 out of his moms share and if any heir was to die with out *leving* an *air* his part should go to the other heirs. Livestock sha*l* be sold*e* to pay my personal debts if not enough money on hand if there is not person *propt* enough should be *solde* heirs should have 4% annual in on (this or their) defered notes. House hold furniture and farm tools should be divided or given to the one that needs them most. I reserve the rite to change this will.

*H. Reynolds"*

■ The chancellor held that Ellis Reynolds was devised the farm in fee, subject to equitable liens thereon in favor of Lowell F. (Dock) Reynolds in the amount of $4,000, Earl Reynolds $4,000, Virginia R. Cornwell $2,500 and James Wesley Howard $1,500. He held further that there should be no defeasance because of the death of Ellis Reynolds without issue surviving him. The four monetary bequests were held to be in fee simple and subject to no defeasance by the death of any of the legatees at any time without issue.

We think the chancellor properly construed the will. The reason for construing the share of James Wesley Howard to be $1,500 rather than $15 as set forth in the will is gathered from the pleadings. This boy, age 14, is a son of Virginia Cornwell by a previous marriage. He was taken into the testator's home when he was three years of age. The testator had manifested an intent to help this grandson with his schooling. It was alleged that, through error, the decimal was placed after the figure 15. In a separate answer Mrs. Cornwell and her husband joined in the prayer of the petition, thereby showing that they desired that James Wesley Howard receive $1,500 rather than $15 of his mother's $4,000 share of the estate.

The principal objection raised to the construction placed· upon the will by the chancellor is that the testator manifested an intent to restrict the shares of Earl Reynolds and Virginia Cornwell. Mr. Reynolds said expressly that he was blocking out a plan so that what he owned would go to his heirs. He said also that $4,000 would be a fair value for each share and that what was given to James Wesley Howard was to be charged to his mother's share. It is equally clear that Mr. Reynolds wanted Ellis to have the farm. The personalty left by Mr. Reynolds will be consumed largely by debts, funeral expenses and costs of administration. Since Ellis gets the land, the shares of the other legatees will consist of personalty, which, as we have noted, constitute equitable liens against the real estate taken by· Ellis. KRS 394.510. Farra v. Adams, 12 Bush 515, 75 Ky. 515; Hinton v. Hinton, 165 Ky. 118, 176 S.W. 947.

We do not .think that the testator intended for the shares of Earl Reynolds and Virginia Cornwell to be restricted or treated differently from those of his .other children. It was suggested in the will that Ellis could borrow money on the land and deposit it in a bank for Earl and Virginia, or could put it into land or something where it would not be wasted or put it in property and "deed it to them and heirs." Two of the suggested ways of handling the shares of these two legatees raised no question of restriction. Even if the third suggested plan should be considered in a restrictive sense, Ellis rather than the testator would be permitted to determine whether Earl and Virginia should take a defeasible fee. Clearly this was not the testator's intent, because he said that he wanted to block out a plan for his heirs and thought $4,000 would be a fair share for each one.

In the latter part of his will the testator said, "if any heir was to die with out *leving* an *air* his part should go to the other heirs." This language creates a defeasible fee, but the question is, Upon what event does the defeasance occur? Certainly, in the case of Ellis, who was given the real estate, the defeasance would have occurred only upon his death without issue prior to the death of the testator. We say this because the will directed that Ellis should have the farm and that he could pay Lowell (Dock) his interest in it in three years. And, too, it

is clear that the testator did not intend that Ellis' share could be defeated, except in the event of his death without issue prior to the death of the testator.

■ We have noted that the shares of the legatees other than Ellis consisted of personalty. In the absence of a contrary intent expressed in a will, where personalty is involved, a defeasance takes place only if the legatee dies without issue before the testator. Whitlow's Adm'r v. Saunders' Adm'r, 237 Ky. 842, 36 S.W.2d 659. We do not think that Mr. Reynolds expressed an intent that the defeasance should take place only in the event the legatees should die without issue after his death.

Judgment affirmed.